John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.:    (858) 209-6941
jnelson@milberg.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFRONIA

| | |
|---|---|
| JESSICA GREEN, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| SEQUOIA BENEFITS AND INSURANCE SERVICES, LLC, and SEQUOIA ONE PEO, LLC, | |
| Defendants. | |

Plaintiff Jessica Green ("Plaintiff") brings this Class Action Complaint ("Complaint") against Defendants Sequoia Benefits and Insurances Services, LLC and Sequoia Consulting Group ("Defendants" or "Sequoia") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## I.        INTRODUCTION

1.       This class action arises out of the recent data breach ("Data Breach") involving Defendants, two related companies that provide office management software and solutions to their

CLASS ACTION COMPLAINT

clients, including "competitive benefits and outsourced HR designed for innovative, growth-minded companies."[1]

2.      Plaintiff brings this Complaint against Defendants for their failure to properly secure and safeguard the personally identifiable information that it collected and maintained as part of their regular business practices, including, but not limited to, names, addresses, dates of birth, Social Security numbers, and other sensitive information (collectively defined herein as "PII").

3.      Upon information and belief, current and former Sequoia employees and clients of separate companies which utilize Sequoia's services are required to entrust Defendants with sensitive, non-public PII, without which Defendants could not perform their regular business activities, in order to obtain employment or certain employment benefits at Defendants or a company that uses Defendants' services. Defendants retain this information for at least many years and even after an individual no longer works for a client of Defendants'.

4.      By obtaining, collecting, using, and deriving a benefit from the PII of Plaintiff and Class Members, Defendants assumed legal and equitable duties to those individuals to protect and safeguard that information from unauthorized access and intrusion.

5.      "Recently", Defendants "became aware that an unauthorized party may have accessed a cloud storage system containing personal information[.]"[2] Defendants subsequently initiated "a response plan", and as a result of its forensic review, Defendants concluded, on an

---

[1] https://one.sequoia.com/about/
[2] The "Notice Letter". A sample copy is available at
https://oag.ca.gov/system/files/Sequoia%20-%20Sample%20Notices.pdf

CLASS ACTION COMPLAINT

unspecified date, that "[u]nauthorized access of information. . . occurred between September 22 and October 6, 2022."[3]

6.      According to Defendants' untitled letter (the "Notice Letter"), the compromised PII included individuals' names, addresses, dates of birth, Social Security numbers, and other sensitive information.[4]

7.      Defendants' investigation concluded that the PII compromised in the Data Breach included Plaintiff's and approximately 580,000 other individuals' information.[5]

8.      Defendants failed to adequately protect Plaintiff's and Class Members PII—and failed to even encrypt or redact this highly sensitive information. This unencrypted, unredacted PII was compromised due to Defendants' negligent and/or careless acts and omissions and their utter failure to protect employees' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of its value in exploiting and stealing the identities of Plaintiff and Class Members. The present and continuing risk of identity theft and fraud to victims of the Data Breach will remain for their respective lifetimes.

9.      Moreover, after the Data Breach, Defendants waited *over three months* (from October 6, 2022 to December 7, 2022) to notify Plaintiff and Class Members of the Data Breach and/or inform them that their PII was compromised. During this time, Plaintiff and Class Members were unaware that their sensitive PII had been compromised, and that they were, and continue to

---

[3] *Id*.

[4] *Id*.

[5] https://apps.web.maine.gov/online/aeviewer/ME/40/b0f0f020-c1d8-408a-97be-7ab76094a7ae.shtml

CLASS ACTION COMPLAINT

be, at significant risk of identity theft and various other forms of personal, social, and financial harm.

10.     In breaching their duties to properly safeguard individuals' PII and give individuals timely, adequate notice of the Data Breach's occurrence, Defendants' conduct amounts to negligence and/or recklessness and violates federal and state statutes.

11.     Plaintiff brings this action on behalf of all persons whose PII was compromised as a result of Defendants' failure to: (i) adequately protect the PII of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendants' inadequate information security practices; and (iii) effectively secure hardware containing protected PII using reasonable and effective security procedures free of vulnerabilities and incidents. Defendants' conduct amounts at least to negligence and violates federal and state statutes.

12.     Defendants disregarded the rights of Plaintiff and Class Members by intentionally, willfully, recklessly, or negligently failing to implement and maintain adequate and reasonable measures to ensure that the PII of Plaintiff and Class Members was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data, even for internal use. As a result, the PII of Plaintiff and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

13.     Plaintiff and Class Members have suffered injury as a result of Defendants' conduct. These injuries include: (i) lost or diminished value of PII; (ii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but

not limited to lost time, (iii) invasion of privacy; and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

14.     Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendants' inadequate data security practices.

## II.     PARTIES

15.     Plaintiff Jessica Green is a natural person, resident, and a citizen of the State of Illinois. She has no intention of moving to a different state in the immediate future. Plaintiff Green is acting on her own behalf and on behalf of others similarly situated. Defendants obtained and continues to maintain Plaintiff Green's PII and thus owed her a legal duty and obligation to protect that PII from unauthorized access and disclosure. Plaintiff Green would not have entrusted her PII to Defendants or allowed Defendants, or anyone in Defendants' position to maintain her PII, had she known that Defendants failed to maintain adequate data security. Plaintiff Green's PII was compromised and disclosed as a result of Defendants' inadequate data security, which resulted in the Data Breach. Plaintiff received a notice letter from Defendants, via U.S. mail, dated December 7, 2022, informing her that the information compromised in the Data Breach included her name, address, date of birth, Social Security number, and other sensitive information.

16.     Defendant Sequoia Benefits and Insurance Services, LLC dba Sequoia Consulting Group ("Sequoia Benefits") is a California corporation headquartered at 1850 Gateway Drive,

CLASS ACTION COMPLAINT

Suite 700, San Mateo, CA 94404. Sequoia Benefits offers services, including a software platform that allows businesses to manage employee experience, employee statistics, compensation, and benefits.

17.     Defendant Sequoia One PEO, LLC ("Sequoia One") is a California corporation headquartered at 22 4th Street, 14th Floor, San Francisco, CA 94103. Sequoia One is a corporate affiliate of Sequoia Benefits that manages human resources, payroll, and employee benefits for businesses.

18.     Defendants Sequoia Benefits and Sequoia One are related entities with Sequoia One specializing in servicing small businesses. Both Defendants issued breach notification letters following the Data Breach. As the precise corporate relationship between the two Defendants and other possible defendants is not fully known, Plaintiff and Class Members reserve the right to amend the complaint should the facts and the evidence necessitate it. All of Plaintiff's claims stated herein are asserted against Defendants and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

## III.     <u>JURISDICTION AND VENUE</u>

19.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiff Green, is a citizen of a state different from Defendants.

20.      This Court has personal jurisdiction over Defendants because Defendant Sequoia Benefits' San Mateo headquarters and Defendant Sequoia One's San Francisco principal place of

CLASS ACTION COMPLAINT

business is located are both this District, and the acts and transactions giving rise to this action occurred in this District.

21.    Venue is proper under 18 U.S.C § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## DIVISIONAL ASSIGNMENT

22.    Pursuant to Civil Local Rule 3-2(c), a substantial part of the events giving rise to the claims brought in this Complaint occurred in San Fransisco County, California. Consequently, assignment of this action to San Francisco Division is appropriate.

## IV.    FACTUAL ALLEGATIONS

### *Background*

23.    Defendants are related-companies that offer their clients "competitive benefits and outsourced HR designed for innovative, growth-minded companies."[6] Defendants provide third party office management solutions to companies around the country. To provide payroll, human resources, benefits packages, and other services to these companies, Defendants collect and maintain the PII of its clients' employees and others.

24.    Plaintiff and Class Members are current and former employees at Defendants and/or current and former employees at companies that utilize Defendants' software.

25.    In order to benefit from Defendants' services, Plaintiff and Class Members were required to provide sensitive and confidential PII, including their names, dates of birth, addresses, Social Security numbers, and other sensitive information.

---

[6] https://one.sequoia.com/about/

CLASS ACTION COMPLAINT

26.     The information held by Defendants in its computer systems at the time of the Data Breach included the unencrypted PII of Plaintiff and Class Members.

27.     Upon information and belief, Defendants made promises and representations to its employees and other individuals, including Plaintiff and Class Members, that the PII by Defendants or one of Defendants' client companies would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendants would delete any sensitive information after it was no longer required to maintain it.

28.     Indeed, the Privacy Policy posted on Defendants' website provides that: "[t]o prevent unauthorized access or disclosure, maintain data accuracy and facilitate the appropriate use of information, Sequoia uses physical, technological and administrative procedures to attempt to protect the personally identifiable information we collect through the Service."[7]

29.     Plaintiff and Class Members provided their PII to Defendants with the reasonable expectation and on the mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

30.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on the sophistication of Defendants to keep their PII confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their PII and demand security to safeguard their PII.

31.     Defendants had a duty to adopt reasonable measures to protect the PII of Plaintiff and Class Members from involuntary disclosure to third parties. Defendants have a legal duty to keep its employees' PII safe and confidential.

---

[7] https://one.sequoia.com/legal/privacy/

CLASS ACTION COMPLAINT

32.     Defendants had obligations created by FTC Act, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their PII confidential and to protect it from unauthorized access and disclosure.

33.     Defendants derived a substantial economic benefit from collecting Plaintiff's and Class Members' PII. Without the required submission of PII, Defendants could not perform the services it provides.

34.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

***The Data Breach***

35.     On or about December 7, 2022, Defendants began sending Plaintiff and other victims of the Data Breach an untitled letter, informing them that:

**What Happened?** As soon as the Company became aware of the situation, a response plan was initiated and a number of immediate actions were completed, including working with outside counsel to initiate a forensic review by Dell Secureworks, a leading global security firm. That forensic review is now complete, which resulted in the following findings:

- No placement of malicious tools or other software such as ransomware was found.
- No evidence of any threat to client or Company networks was found.
- No evidence of compromise of Company endpoints was found.
- No evidence of data being used or distributed has been found to date.
- No evidence of continuing unauthorized activity in Company systems was found.
- Unauthorized access of information in a cloud storage system occurred between September 22 and October 6, 2022.
- The access was "read only," and there is no evidence that the unauthorized party changed any client data.

Further, based on internal investigation, there have been no instances of service interruption for any client or individuals from this situation. Even though the forensic review found no evidence that the unauthorized party

misused or distributed data, the Company is notifying clients and individuals and offering three years of identity protection services through Experian to impacted individuals.

**How did Company Respond?**

As soon as the Company became aware that an unauthorized party may have accessed a cloud storage system, the Company initiated a response plan and completed a number of actions, including, retaining outside counsel to assist in investigating this matter, activating through counsel Dell Secureworks to conduct a thorough forensic review, and engaging through counsel a separate global consulting firm with cybersecurity expertise to serve as technical advisors to counsel to supplement the security review.

**What Information Was Potentially Involved?** The unauthorized party may have been able to access some personal information, including demographic information such as name, address, date of birth, gender, marital status, and employment status, social security number, work email address, member ID, wage data for benefits, attachments that may have been provided for advocate services (if any), and ID cards and any COVID test results of vaccine card that may have been uploaded.[8]

36.     Omitted from the Notice Letter were the date of the Data Breach, the date that Defendants detected the Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, why it took over three months from the Data Breach's occurrence to inform impacted individuals that their information was involved, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their PII remains protected.

37.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

38.     Moreover, Defendants admit in the Notice Letter that Plaintiff and Class Members are at a present and continuing risk of fraud and identity theft and admonishes them to "take steps

---

[8] Notice Letter.

CLASS ACTION COMPLAINT

to monitor your accounts, obtain your credit reports, or place a fraud alert or security freeze on your credit account."

39.     Defendants did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII, such as encrypting the information or deleting it when it is no longer needed.

40.     The attacker targeted, accessed, and acquired files in Defendants' computer systems containing unencrypted PII of Plaintiff and Class Members, including their names, addresses, dates of birth, and Social Security numbers. Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

41.     Plaintiff further believes her PII, and that of Class Members, was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

### *Data Breaches Are Preventable*

42.     To prevent and detect cyber-attacks and/or ransomware attacks Defendants could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

CLASS ACTION COMPLAINT

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment.

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[9]

43.    To prevent and detect cyber-attacks Defendants could and should have

implemented, as recommended by the United States Cybersecurity & Infrastructure Security

Agency, the following measures:

---

[9] *Id.* at 3-4.

CLASS ACTION COMPLAINT

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net).

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it.

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network traffic.[10]

44.     To prevent and detect cyber-attacks or ransomware attacks Defendants could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

---

[10] *See* Security Tip (ST19-001) Protecting Against Ransomware (original release date Apr. 11, 2019), *available at:* https://us-cert.cisa.gov/ncas/tips/ST19-001 (last visited Oct. 17, 2022).

CLASS ACTION COMPLAINT

**Secure internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events;

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection
- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[11]

45. Given that Defendants were storing the sensitive PII of its current and former employees and other companies' current and former employees, Defendants could and should have implemented all of the above measures to prevent and detect cyberattacks.

---

[11] *See* Human-operated ransomware attacks: A preventable disaster (Mar 5, 2020), *available at:* https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster/ (last visited Nov. 11, 2021).

CLASS ACTION COMPLAINT

46.     The occurrence of the Data Breach indicates that Defendants failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII of approximately 580,000 employees, including that of Plaintiff and Class Members.

### *Defendants Acquire, Collect, and Store Plaintiff's and the Class's PII*

47.     As a condition of employment with Defendants or one of Defendants' client companies, Plaintiff and Class Members were required to give their sensitive and confidential PII to Defendants.

48.     Defendants retains and store this information and derives a substantial economic benefit from the PII that it collects. But for the collection of Plaintiff's and Class Members' PII, Defendants would be unable to perform its products or services.

49.     By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendants assumed legal and equitable duties and knew or should have known that they were responsible for protecting the PII from disclosure.

50.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendants to keep their PII confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

51.     Defendants could have prevented this Data Breach by properly securing and encrypting the files and file servers containing the PII of Plaintiff and Class Members.

CLASS ACTION COMPLAINT

1

2

***<u>Defendants Knew or Should Have Known of the Risk Since Employers in Possession of
PII are Particularly Susceptible to Cyber Attacks.</u>***

3

4

5

6

52.     Data thieves regularly target companies like Defendants' due to the highly sensitive information that they custody. Defendants knew and understood that unprotected PII is valuable and highly sought after by criminal parties who seek to illegally monetize that PII through unauthorized access.

7

8

9

53.     Defendants' data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting entities that collect and store PII and other sensitive information, like Defendants, preceding the date of the breach.

10

11

12

13

14

15

54.     In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendants knew or should have known that the PII that they collected and maintained would be targeted by cybercriminals.

16

17

18

19

55.     Additionally, as companies became more dependent on computer systems to run their business,[12] *e.g.*, working remotely as a result of the Covid-19 pandemic, and the Internet of Things ("IoT"), the danger posed by cybercriminals is magnified, thereby highlighting the need for adequate administrative, physical, and technical safeguards.[13]

20

21

22

[12] https://www.federalreserve.gov/econres/notes/feds-notes/implications-of-cyber-risk-for-financial-stability-20220512.html

23

24

[13] https://www.picussecurity.com/key-threats-and-cyber-risks-facing-financial-services-and-banking-firms-in-2022

CLASS ACTION COMPLAINT

56.     As a custodian of PII, Defendants knew, or should have known, the importance of safeguarding the PII entrusted to it by Plaintiff and Class members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members as a result of a breach.

57.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[14]

58.     The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[15]

59.     Despite the prevalence of public announcements of data breach and data security compromises, Defendants failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

60.     Indeed, cyber-attacks, such as the one experienced by Defendants, have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. As one report explained, smaller entities that store PII  are "attractive to ransomware criminals…because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[16]

---

[14]   *See* 2021 Data Breach Annual Report (ITRC, Jan. 2022) (available at https://notified.idtheftcenter.org/s/), at 6.

[15]   *Id.*

[16]https://www.law360.com/consumerprotection/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware?nl_pk=3ed44a08-fcc2-4b6c-89f0-aa0155a8bb51&utm_source=newsletter&utm_medium=email&utm_campaign=consumerprotection (last accessed Oct. 17, 2022).

CLASS ACTION COMPLAINT

61.     At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

62.     Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' server(s), amounting to potentially hundreds of thousands of individuals' detailed, PII, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

63.     In the Notice Letter, Defendants make an offer of 36 months of identity monitoring services. This is wholly inadequate to compensate Plaintiff and Class Members as it fails to provide for the fact victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft, financial fraud, and it entirely fails to provide sufficient compensation for the unauthorized release and disclosure of Plaintiff and Class Members' PII. Moreover, once this service expires, Plaintiff and Class Members will be forced to pay out of pocket for necessary identity monitoring services.

64.     Defendants' offering of credit and identity monitoring establishes that Plaintiff and Class Members' sensitive PII *was* in fact affected, accessed, compromised, and exfiltrated from Defendants' computer systems.

65.     The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

CLASS ACTION COMPLAINT

66.     The ramifications of Defendants' failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen—particularly Social Security numbers—fraudulent use of that information and damage to victims may continue for years.

67.     As a provider of office management services in possession of sensitive and confidential PII, Defendants knew, or should have known, the importance of safeguarding the PII entrusted to them by Plaintiff and Class Members and of the foreseeable consequences if its data security systems were breached. This includes the significant costs imposed on Plaintiff and Class Members as a result of a breach. Nevertheless, Defendants failed to take adequate cybersecurity measures to prevent the Data Breach.

### *Value of Personally Identifying Information*

68.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[17] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[18]

69.     The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity

---

[17] 17 C.F.R. § 248.201 (2013).

[18] *Id.*

CLASS ACTION COMPLAINT

credentials.[19] For example, Personal Information can be sold at a price ranging from $40 to $200.[20] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[21]

70.     For example, Social Security numbers are among the worst kind of PII to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[22]

71.     What's more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of

---

[19] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 17, 2022).

[20] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 17, 2022).

[21] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 217, 2022).

[22] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Oct. 17, 2022).

CLASS ACTION COMPLAINT

misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

72.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[23]

73.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number and name.

74.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[24]

75.     Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

---

[23] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last visited Oct. 17, 2022).

[24] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited Oct. 17, 2022).

CLASS ACTION COMPLAINT

76.     The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

77.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

### *Defendants Fail to Comply with FTC Guidelines.*

78.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

79.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal employee information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer

---

[25] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 17, 2022).

CLASS ACTION COMPLAINT

networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[26]

80.     The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[27]

81.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

82.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect employee data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential employee data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

83.     These FTC enforcement actions include actions against employers, like Defendants.

---

[26] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Oct. 17, 2022).

[27] *Id.*

CLASS ACTION COMPLAINT

84.     Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendants' duty in this regard.

85.     Defendants failed to properly implement basic data security practices.

86.     Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

87.     Upon information and belief, Defendants were at all times fully aware of its obligation to protect the PII of its employees and other companies' employees, Defendants were also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendants' conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

### ***Defendants Fail to Comply with Industry Standards***

88.     As noted above, experts studying cyber security routinely identify entities in possession of PII as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

89.     Several best practices have been identified that, at a minimum, should be implemented by employers in possession of PII, like Defendants, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor

CLASS ACTION COMPLAINT

authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

90. Other best cybersecurity practices that are standard for employers in possession of PII include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

91. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

92. These foregoing frameworks are existing and applicable industry standards for employers, and upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## COMMON INJURIES & DAMAGES

93. As a result of Defendants' ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of PII ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and

CLASS ACTION COMPLAINT

Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain; (d) diminution of value of their PII; and (e) the continued risk to their PII, which remains in the possession of Defendants, and which is subject to further breaches, so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' PII.

### *The Data Breach Increases Plaintiff's and Class Member's Risk of Identity Theft*

94.     The unencrypted PII of Plaintiff and Class Members will end up for sale on the dark web as that is the *modus operandi* of hackers.

95.     Unencrypted PII may also fall into the hands of companies that will use the detailed PII for targeted marketing without the approval of Plaintiff and Class Members. Simply, unauthorized individuals can easily access the PII of Plaintiff and Class Members.

96.     The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal PII to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

97.     Plaintiff's and Class Members' PII is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit off their misfortune.

### *Loss of Time to Mitigate the Risk of Identity Theft and Fraud*

98.     As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn

CLASS ACTION COMPLAINT

about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm – yet the resource and asset of time has been lost.

99.     Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must, as Defendants' Notice Letter encourages them, monitor their financial accounts for many years to mitigate the risk of identity theft.

100.    Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching the Data Breach's occurrence, researching and signing up for Defendants' offered credit monitoring and identity theft insurance, and reviewing their financial accounts for fraudulent activity, which may take years to detect.

101.    Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[28]

102.    Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity),

---

[28] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf.

CLASS ACTION COMPLAINT

reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[29]

103.    A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of personal and financial information:[30]



104.    And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches

---

[29] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited July 7, 2022).

[30] Credit Card and ID Theft Statistics" by Jason Steele, 10/24/2017, at:

https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php (last visited Sep 13, 2022).

CLASS ACTION COMPLAINT

("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[4]

### *Diminution of Value of PII.*

105.   PII is a valuable property right.[31] Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

106.   Sensitive PII can sell for as much as $363 per record according to the Infosec Institute.[32]

107.   An active and robust legitimate marketplace for PII also exists. In 2019, the data brokering industry was worth roughly $200 billion.[33] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[34,35]

---

[31] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," p. 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited Sep. 13, 2022) ("GAO Report").

[32] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[33] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited Sep. 13, 2022).

[34]   https://www.latimes.com/business/story/2019-11-05/column-data-brokers

[35]   https://datacoup.com/

CLASS ACTION COMPLAINT

Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[36]

108.    As a result of the Data Breach, Plaintiff's and Class Members' PII , which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

109.    At all relevant times, Defendants knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, and of the foreseeable consequences that would occur if Defendants' data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

110.    The fraudulent activity resulting from the Data Breach may not come to light for years.

111.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

112.    Defendants were, or should have been, fully aware of the unique type and the significant volume of data on Defendants' network, amounting to potentially hundreds of

---

[36] https://digi.me/what-is-digime/

CLASS ACTION COMPLAINT

thousands of individuals' detailed personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

113.    The injuries to Plaintiff and Class Members were directly and proximately caused by Defendants' failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

### *Future Costs of Credit and Identity Theft Monitoring is Reasonable and Necessary.*

114.    Given the type of targeted attack, the sophisticated criminal activity, and the type of PII involved in this case, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the PII for identity theft crimes –*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

115.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that his or her PII was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

116.    Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

117.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is reasonable and necessary cost to monitor to protect Class Members from the risk of identity theft that arose from Defendants' Data Breach. This is a future

CLASS ACTION COMPLAINT

cost for a minimum of five years that Plaintiff and Class Members would not need to bear but for Defendants' failure to safeguard their PII.

### *Loss of Benefit of the Bargain.*

118.    Furthermore, Defendants' poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to provide their labor and PII to Defendants or one of Defendants' client companies, Plaintiff and other reasonable employees understood and expected that they were, in part, providing their labor and PII to Defendants and/or to one of Defendants' client companies, and in return, Defendants would, among other things, adequately safeguard their PII. However, Defendants did not provide the expected data security. Accordingly, Plaintiff and Class Members received employment of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendants and/or one of Defendants' client companies.

### *Plaintiff Green's Experience.*

119.    Prior to the Data Breach, Plaintiff Green was employed at Robinhood, a client of Defendants', from approximately July 2021 through September 2022. Defendants acquired Plaintiff's PII as a result of it business relationship with her employer, including but not limited to her name, address, date of birth, and Social Security number.

120.    Plaintiff Green is very careful about sharing her sensitive PII. Plaintiff stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source.

121.    At the time of the Data Breach—September 22, 2022 through October 6, 2022–– Defendants retained Plaintiff Green's PII in its system. Plaintiff Green would not have allowed

Defendants or anyone in Defendants' position to maintain her PII had Defendants disclosed that it lacked data security practices adequate to safeguard PII.

122.    Plaintiff Green received the Notice Letter, by U.S. mail, directly from Defendants, dated December 7, 2022. According to the Notice Letter, Plaintiff Green's PII was improperly accessed and obtained by unauthorized third parties, including her name, address, date of birth, and Social Security number.

123.    Upon receiving the Notice Letter from Defendants, Plaintiff Green also spent time dealing with the consequences of the Data Breach, including researching the Data Breach, reviewing her financial accounts for fraudulent activity, and enrolling in credit monitoring and identity theft insurance. This time has been lost forever and cannot be recaptured.

124.    Subsequent to the Data Breach, Plaintiff Green has suffered numerous, substantial injuries including, but not limited to, (i) invasion of privacy; (ii) the diminution of the value of her PII (iii) loss of benefit of the bargain; and (iv) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remain backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect her PII.

125.    Plaintiff Green further suffered actual injury in the form of damages and diminution in the value of her PII—a form of intangible property that she entrusted to Defendants, which was compromised by the Data Breach.

126.    Plaintiff Green also suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy.

CLASS ACTION COMPLAINT

127.    Plaintiff Green has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen PII, especially her Social Security number, being placed in the hands of unauthorized third parties and possibly criminals.

128.    Plaintiff Green has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

### V.     CLASS ALLEGATIONS

129.    Pursuant to Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4) and/or 23(c)(5), Plaintiff brings this Action on behalf of herself and all other persons similarly situated.

130.    The Class that Plaintiff seeks to represent is defined as follows:

**All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach reported by Defendants on or about December 7, 2022 (the "Class").**

131.    Excluded from the Class are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

132.    Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

CLASS ACTION COMPLAINT

133. <u>Numerosity</u>. The members of the Class are so numerous that joinder of all members is impracticable, if not completely impossible. At least 580,000 individuals were notified by Defendants of the Data Breach, according to the breach report submitted to Maine Attorney General's Office.[37] The Class is apparently identifiable within Defendants' records, and Defendants have already identified these individuals (as evidenced by sending them breach notification letters).

134. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

    a.   Whether and to what extent Defendants had a duty to protect the PII of Plaintiff and Class Members;

    b.   Whether Defendants had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

    c.   Whether Defendants had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

    d.   Whether Defendants failed to adequately safeguard the PII of Plaintiff and Class Members;

    e.   Whether and when Defendants actually learned of the Data Breach;

    f.   Whether Defendants adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

---

[37] https://apps.web.maine.gov/online/aeviewer/ME/40/b0f0f020-c1d8-408a-97be-7ab76094a7ae.shtml

CLASS ACTION COMPLAINT

g.   Whether Defendants violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h.   Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i.   Whether Defendants adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.   Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendants' wrongful conduct; and,

k.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

135.   <u>Typicality.</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

136.   <u>Policies Generally Applicable to the Class.</u> This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

CLASS ACTION COMPLAINT

137.   <u>Adequacy.</u> Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages she has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

138.   <u>Superiority and Manageability.</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

139.   The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that

CLASS ACTION COMPLAINT

experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

140.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

141.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

142.    Unless a Class-wide injunction is issued, Defendants may continue in its failure to properly secure the PII of Class Members, Defendants may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendants may continue to act unlawfully as set forth in this Complaint.

143.    Further, Defendants have acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

144.    Likewise, particular issues under Rule 23(c)(2) are appropriate for certification because such claims present only particular, common, issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

      a.    Whether Defendants failed to timely notify the Plaintiff and the class of the Data Breach;

CLASS ACTION COMPLAINT

b.  Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c.  Whether Defendants' security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.  Whether Defendants' failure to institute adequate protective security measures amounted to negligence;

e.  Whether Defendants failed to take commercially reasonable steps to safeguard employees' PII; and,

f.  Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

145.  Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 144 above as if fully set forth herein.

146.  Defendants required Plaintiff and Class Members to entrust it with non-public PII as a condition of employment or as a condition of receiving employee benefits.

147.  Plaintiff and the Class Members entrusted their PII, indirectly or directly, to Defendants with the understanding that Defendants would safeguard their information and delete it once it was no longer required to retain it after the end of the employment relationship.

148.  Defendants had a duty to employ reasonable security measures and otherwise protect the PII of Plaintiff and Class Members.

CLASS ACTION COMPLAINT

149.    Defendants had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed.

150.    By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendants had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members' PII held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendants' duty included a responsibility to implement processes by which they could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

151.    Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

152.    Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential PII.

153.    Defendants breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

  a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII;

  b.    Failing to adequately monitor the security of their networks and systems;

CLASS ACTION COMPLAINT

- 40 -

c.   Failing to periodically ensure that their email system had plans in place to maintain reasonable data security safeguards;

d.   Allowing unauthorized access to Class Members' PII; and

e.   Failing to detect in a timely manner that Class Members' PII had been compromised.

154.   It was foreseeable that Defendants' failure to use reasonable measures to protect Class Members' PII would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry.

155.   It was therefore foreseeable that the failure to adequately safeguard Class Members' PII would result in one or more types of injuries to Class Members.

156.   There is a temporal and close causal connection between Defendants' failure to implement security measures to protect the PII and the harm suffered, or risk of imminent harm suffered by Plaintiff and the Class.

157.   As a result of Defendants' negligence, Plaintiff and the Class Members have suffered and will continue to suffer damages and injury including, but not limited to: (i) lost or diminished value of PII; (ii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iii) invasion of privacy; and (iv) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the PII.

158.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

159.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

## COUNT II
### Unjust Enrichment
### (On Behalf of Plaintiff and the Class)

160.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 159 above as if fully set forth herein.

161.    Through their course of conduct, Defendants, Plaintiff, and Class Members entered into implied contracts for the Defendants to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' PII.

162.    Defendants induced Plaintiff and Class Members to provide and entrust their PII, including name, including, without limitation: Social Security numbers, first and last names, addresses, dates of birth, employment status, marital status, wage data related to employee benefits, member identification cards, COVID-19 test results and vaccination cards.

163.    Defendants solicited and invited Plaintiff and Class Members to provide their PII as part of its regular business practices. Plaintiff and Class Members accepted Defendants' offer and provided PII to Defendants.

164.    As a condition of being customers of Defendants, Plaintiff and Class Members provided and entrusted their PII to Defendants. In so doing, Plaintiff and Class Members entered into implied contracts with Defendants by which Defendants agreed to safeguard and protect such

CLASS ACTION COMPLAINT

non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen.

165.    A meeting of the minds occurred when Plaintiff and Class Members agreed to, and did, provide their PII to Defendants, in exchange for, amongst other things, the protection of their PII.

166.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendants.

167.    Defendants breached the implied contracts they made with Plaintiff and Class Members by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

168.    As a direct and proximate result of Defendants' above-described breach of implied contract, Plaintiff and Class Members have suffered (and will continue to suffer), ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; and other economic and non-economic harm.

169.    As a direct and proximate result of Defendants' breach of the implied contracts, Plaintiff and Class Members sustained damages as alleged herein.

170.    Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach, including the loss of the benefit of the bargain.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## COUNT III
### Invasion of Privacy
### (On Behalf of Plaintiff and the Class)

171.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 170 above as if fully set forth herein.

172.    Plaintiff and Class Members had a legitimate expectation of privacy to their PII and were entitled to the protection of this information against disclosure to unauthorized third parties.

173.    Defendants owed a duty to Plaintiff and Class Members to keep their PII confidential.

174.    Defendants intentionally failed to protect and released to unknown and unauthorized third parties the non-redacted and non-encrypted PII of Plaintiff and Class Members.

175.    Defendants allowed unauthorized and unknown third parties access to and examination of the PII of Plaintiff and Class Members, by way of Defendants' failure to protect the PII.

176.    The unauthorized release to, custody of, and examination by unauthorized third parties of the PII of Plaintiff and Class Members is highly offensive to a reasonable person.

177.    The intrusion was into a place or thing, which was private and is entitled to be private. Plaintiff and Class Members disclosed their PII to Defendants as part of their relationships with Defendants, but privately with an intention that the PII would be kept confidential and would be protected from unauthorized disclosure. Plaintiff and Class Members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

178.    The Data Breach at the hands of Defendants constitutes an intentional interference with Plaintiff's and Class Members' interest in solitude or seclusion, either as to their persons or

CLASS ACTION COMPLAINT

as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

179.    Defendants acted with intention and a knowing state of mind when they permitted the Data Breach to occur because it was with actual knowledge that its information security practices were inadequate and insufficient.

180.    Because Defendants acted with this knowing state of mind, they had notice and knew the inadequate and insufficient information security practices would cause injury and harm to Plaintiff and Class Members.

181.    As a proximate result of the above acts and omissions of Defendants, PII of Plaintiff and Class Members was disclosed to third parties without authorization, causing Plaintiff and Class Members to suffer damages.

182.    Unless and until enjoined, and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class Members in that the PII maintained by Defendants can be viewed, distributed, and used by unauthorized persons for years to come. Plaintiff and Class Members have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class Members.

**<u>COUNT IV</u>**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

183.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 182 above as if fully set forth herein.

184.    This count is plead in the alternative to the breach of implied contract count above.

CLASS ACTION COMPLAINT

185.    Plaintiff and Class Members conferred a monetary benefit upon Defendants in the form of providing their valuable PII to Defendants. Defendants accepted and appreciated this benefit and used Plaintiff's and Class Members' PII for its own profit.

186.    Plaintiff and Class Members entrusted their PII to Defendants on the understanding that Defendants, or anyone in Defendants' position, would pay for the administrative costs of reasonable data privacy and security practices and procedures. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII held by Defendants.

187.    Defendants benefited from receiving Plaintiff's and Class Members' PII through its ability to retain and use that information for its own benefit. Defendants understood and accepted this benefit.

188.    Defendants knew Plaintiff and Class Members conferred a benefit which Defendants accepted. Defendants profited from Plaintiff's and Class Members' PII and used their PII for business purposes.

189.    Defendants understood and appreciated that Plaintiff's and Class Members' PII was private and confidential, and its value depended upon Defendants maintaining the privacy and confidentiality of that information.

190.    Defendants failed to provide reasonable security, safeguards, and protections to the PII of Plaintiff and Class Members.

191.    Defendants enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

192.    Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendants instead made calculated decisions to increase their profits at the expense

of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

193.   Under the principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and Class Members, because Defendants failed to implement appropriate data management and security measures mandated by industry standards.

194.   Defendants' enrichment at the expense of Plaintiff and Class Members is and was unjust.

195.   Defendants acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

196.   If Plaintiff and Class Members knew that Defendants had not secured their PII, they would not have agreed to provide their PII to Defendants or one of Defendants' client companies.

197.   Plaintiff and Class Members have no adequate remedy at law.

198.   As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members have suffered and will suffer injury as described herein.

199.   Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants, plus attorneys' fees, costs, and interest thereon.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendants and that the Court grants the following:

CLASS ACTION COMPLAINT

A.    For an order certifying the Class, as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

B.    For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i.    prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

ii.    requiring Defendants to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

iii.    requiring Defendants to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendants can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

CLASS ACTION COMPLAINT

iv.     requiring Defendants to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

v.     prohibiting Defendants from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vi.     requiring Defendants to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

vii.     requiring Defendants to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.     requiring Defendants to audit, test, and train its security personnel regarding any new or modified procedures;

ix.     requiring Defendants to segment data by, among other things, creating firewalls and access controls so that if one area of Defendants' network is compromised, hackers cannot gain access to other portions of Defendants' systems;

x.     requiring Defendants to conduct regular database scanning and securing checks;

CLASS ACTION COMPLAINT

xi.    requiring Defendants to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xii.    requiring Defendants to conduct internal training and education routinely and continually, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiii.    requiring Defendants to implement a system of tests to assess its employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendants' policies, programs, and systems for protecting personal identifying information;

xiv.    requiring Defendants to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendants' information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.    requiring Defendants to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential PII to third

CLASS ACTION COMPLAINT

parties, as well as the steps affected individuals must take to protect themselves;

xvi.    requiring Defendants to implement logging and monitoring programs sufficient to track traffic to and from Defendants' servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendants' compliance with the terms of the Court's final judgment, to

provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D.      For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.      For an award of attorneys' fees and costs as allowed by law;

F.      For prejudgment interest on all amounts awarded; and

G.      Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

Dated: March 7, 2023                    Respectfully Submitted,

*/s/ John J. Nelson*
John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
401 W Broadway, Suite 1760
San Diego, CA 92101
Tel.:  (858) 209-6941
jnelson@milberg.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT